# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

MICHAEL ANASTASIO, ALAN HARRY, LEVANTE CAPITAL, LLC, and PUBLIC UTILITY DISTRICT NO. 1 OF CLARK COUNTY, WASHINGTON (D/B/A CLARK PUBLIC UTILITIES), on behalf of themselves and all others similarly situated,

                        Plaintiffs,

            vs.

TOTAL GAS & POWER NORTH AMERICA, INC. and JOHN DOES 1-50,

                        Defendants.

No. 1:15-cv-09689

Hon. John G. Koeltl

# PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT KIRBY MCINERNEY LLP, ROBINS KAPLAN LLP, CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP AND COHEN MILSTEIN SELLERS & TOLL PLLC AS INTERIM CO-LEAD CLASS COUNSEL

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

I.  Each of the Mandatory Factors of Rule 23(g) Militates in Favor of the
    Appointment of Movants as Interim Co-Lead Counsel ................................................. 2

    A.  Movants' Possess Extensive Experience Litigating Claims Similar To
        Those Alleged in the Complaint, Including Commodities Manipulation,
        Antitrust Litigation and Class Actions ................................................................... 2

        1.  Kirby McInerney ............................................................................................ 2

        2.  Robins Kaplan ................................................................................................ 5

        3.  CCMS ............................................................................................................. 9

        4.  Cohen Milstein ............................................................................................ 12

    B.  Movants' Commitment To This Action Is Demonstrated By The
        Significant Time And Resources They Have Expended Identifying,
        Investigating, and Prosecuting The Claims To Date on Behalf of the Class ........ 14

    C.  Movants Have the Requisite Knowledge of Commodity Futures
        Manipulation, Antitrust Law and Class Action Litigation .................................... 15

    D.  Movants Will Commit More Than Ample Resources to Representing the
        Class ..................................................................................................................... 15

        1.  Kirby McInerney .......................................................................................... 15

        2.  Robins Kaplan .............................................................................................. 16

        3.  CCMS ........................................................................................................... 17

        4.  Cohen Milstein ............................................................................................ 18

II. Discretionary Factors Favor Granting Kirby McInerney, Robins Kaplan, CCMS,
    and Cohen Milstein's Motion ...................................................................................... 19

    A.  Designation of the Proposed Four-Firm Interim Co-Lead Counsel
        Structure Will Facilitate Sound Judgment and Efficient Litigation ..................... 19

    B.  Movants Agree The Proposed Four-Firm Interim Lead Counsel Structure
        Is In The Best Interests Of The Classes ............................................................... 20

CONCLUSION ..................................................................................................................... 21

**Cases**

*Bear Stearns MBS Litigation*,
    No. 08-cv-08093 (S.D.N.Y. 2008)................................................................13

*The City of New York, et al. v. Abbott Laboratories, et al.*,
    No. 01–cv-12257 (D. Mass. 2001)...............................................................16

*Harborview MBS Litigation*,
    No. 08-cv-5093 (S.D.N.Y. 2008).................................................................13

*In re Air Cargo Shipping Services Antitrust Litig.*,
    No. 06-md-01775 (E.D.N.Y. 2006) .............................................................16

*In re Air Cargo Shipping Servs. Antitrust Litig.*,
    240 F.R.D. 56 (E.D.N.Y. 2006)..................................................................20

*In re Automotive Wire Harness Systems Antitrust Litig.*,
    No. 12-md-02311 (E.D. Mich. Mar. 19, 2012)..........................................19

*In Re Buspirone Antitrust Litigation*,
    No. 01-md-01413 (S.D.N.Y. 2001) ........................................................8, 19

*In re Cendant Corp. PRIDES Litig.*,
    No. 98-cv-2819 (D.N.J. 1998) .....................................................................3

*In re Citigroup Inc. Sec. Litig.*,
    No. 07-cv-9901 (S.D.N.Y. 2007)..................................................................2

*In re Dental Supplies Antitrust Litig.*,
    No. 16-cv-00696 (E.D.N.Y. 2016) .............................................................19

*In re Electronic Books Antitrust Litigation*,
    No. 11-md-02292 (S.D.N.Y. 2011) .............................................................13

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
    No. 11-md-2262, 2011 WL 5980198 (S.D.N.Y. Nov. 29, 2011) .................1

*In re Lorazepam and Clorazepate Antitrust Litigation*,
    No. 02-cv-01299 (D.D.C. 2002) ..................................................................8

*In re National City Corporation Securities, Derivative & ERISA Litigation*,
    No. 08-nc-70004 (N.D. Ohio 2008)..............................................................3

*In re Natural Gas Commodity Litig.*,
  No. 03-cv-6186 (S.D.N.Y. 2003) ........................................................................20

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  No. 05-md-1720 (E.D.N.Y. 2005) ........................................................................16

*In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*,
  986 F. Supp. 2d 207 (E.D.N.Y. 2013) ...................................................................5

*In re Pharmaceutical Industry Average Wholesale Price Litigation*,
  No. 01-md-1456 (D. Mass. 2001) ........................................................................16

*In re Sumitomo Copper Litigation*,
  No. 96-cv-4584 (S.D.N.Y. 1999) ..........................................................................3

*In re TFT-LCD (Flat Panel) Antitrust Litigation*,
  No. 07-md-01827 (N.D. Cal. 2007) ........................................................................8

*In re Urethane Antitrust Litigation*,
  No. 04-md-1616 (D. Kan. 2004) ..........................................................................13

*RALI MBS Litigation*,
  No. 08-cv-8781 (S.D.N.Y. 2008) ....................................................................13, 18

*State of Minnesota and Blue Cross & Blue Shield of Minnesota v. Philip Morris
  Inc. et al.*,
  No. Cl-95-1324 (Minn.) ........................................................................................5

**Rules**

Fed. R. Civ. P. 23(f) ........................................................................................18

Fed. R. Civ. P. 23(g) ................................................................................1, 2, 19

Pursuant to Federal Rule of Civil Procedure 23(g), Kirby McInerney LLP ("Kirby McInerney"), Robins Kaplan LLP ("Robins Kaplan"), Cafferty Clobes Meriwether & Sprengel LLP ("CCMS"), and Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") (collectively, "Movants") hereby apply to serve as Plaintiffs' Interim Co-Lead Counsel for the proposed class as more fully set forth in the Second Amended Complaint, 1:15-cv-09689, ECF No. 19, ("Class"), as well as any actions on behalf of the Class subsequently filed in or transferred to this Court. As detailed below, Movants satisfy the requirements of Rule 23(g). Movants invested significant time and resources on behalf of the Class, including identifying, investigating and prosecuting the claims in this litigation, and filing a Second Amended Complaint ("Complaint") which contains substantial and detailed allegations as well as extensive expert analysis. No other law firms have filed a complaint since this action was begun on December 10, 2015. Movants possess extensive experience litigating commodities manipulation cases, antitrust class actions, and other complex lawsuits, having successfully litigated some of the largest and most complex antitrust and commodities manipulation cases in history as well as many class actions involving claims quite similar to those alleged in the Complaint. Movants possess more than ample resources to see this litigation through to a successful conclusion, and the proposed four-firm leadership structure would facilitate both sound decision-making and efficiency. Accordingly, Movants respectfully request that the Court grant their application to serve as Interim Co-Lead Counsel for the proposed Class.

## INTRODUCTION

Federal Rule of Civil Procedure 23(g)(1) outlines the factors that a court must consider when appointing lead counsel at the time the class is certified. Those considerations apply equally to the appointment of interim lead counsel before certification. *See, e.g.*, *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2011 WL 5980198, at *4 (S.D.N.Y.

Nov. 29, 2011).   Accordingly, when considering Movants' application to serve as Interim Co-Lead Counsel, the Court must consider the following four factors:  (1) the work Movants have done in identifying or investigating the claims in the action; (2) Movants' experience in handling class actions, complex litigation, and other claims similar to those asserted in the action; (3) Movants' knowledge of the applicable law; and (4) the resources Movants will commit to representing the class.  FED. R. CIV. P. 23(g)(1)(A)(i)-(iv).

## ARGUMENT

I.   **Each of the Mandatory Factors of Rule 23(g) Militates in Favor of the Appointment of Movants as Interim Co-Lead Counsel**

    A.   **Movants' Possess Extensive Experience Litigating Claims Similar To Those Alleged in the Complaint, Including Commodities Manipulation, Antitrust Litigation and Class Actions**

        1.   **Kirby McInerney**

Kirby McInerney is a specialist litigation firm with expertise in antitrust, commodities, securities and complex litigation.   *See* Kirby McInerney Firm Resume, Exhibit A to the Declaration of David E. Kovel ("Kovel Declaration").   Kirby McInerney is one of the oldest firms in the field, with over sixty years of experience, and has been a pioneer in securities and class action law.   Kirby McInerney has achieved landmark results in the fields of antitrust, commodities fraud, securities fraud, corporate governance, consumer, and health care, representing clients in both class actions and individual litigations.

As a consequence of this record, Kirby McInerney's experience in sophisticated financial cases is remarkable.   Recently, Kirby McInerney served as lead counsel in a securities class action lawsuit against Citigroup, which settled for approximately $590 million.   *See In re Citigroup Inc. Sec. Litig.*, No. 07-cv-9901 (S.D.N.Y. 2007) (Stein, J.).   A notable example of Kirby McInerney's securities cases includes representation of an investment fund that acted as

lead plaintiff for a certified class of purchasers of Preferred Redeemable Increased Dividend Equity Securities in connection with Cendant Corporation's accounting fraud. *See In re Cendant Corp. PRIDES Litig.*, No. 98-cv-2819 (D.N.J. 1998). Kirby McInerney secured a $350 million settlement – an unprecedented 100 percent recovery for the class. Also, representing a bank as lead plaintiff, Kirby McInerney acted as co-lead counsel in connection with a securities action brought against Adelphia Communications Corporation, obtaining a $455 million settlement for the class. Kirby McInerney also represented the New York State Common Retirement Fund as lead plaintiff in *In re National City Corporation Securities, Derivative & ERISA Litigation*, No. 08-nc-70004 (N.D. Ohio 2008), a securities class action arising from National City's alleged misrepresentations regarding exposure to subprime mortgage related losses, and ultimately secured a $168 million settlement.

Kirby McInerney's experience in antitrust and commodities litigation over the past two decades is also substantial. In commodities litigation, Kirby McInerney has been involved in some of the most cutting edge areas of futures manipulation cases, including a seminal case involving Sumitomo Corporation's manipulation of the copper market. *See In re Sumitomo Copper Litigation*, No. 96-cv-4584 (S.D.N.Y. 1999). Of late, Kirby McInerney has represented market makers and hedge funds in commodities manipulation cases involving crude oil, foreign exchange, silver, propane and fixed income products. Kirby McInerney's experience in market manipulation and price fixing for both direct and indirect purchasers, in cases brought under the Sherman Act and state law analogs, spans the markets for gasoline, propane, cement, concrete, steel, potash, silver and even fixed income products.

David Kovel, a leader in Kirby McInerney's antitrust and commodities litigation practice, is heading the firm's commitment in this matter and has significant experience representing both

individual and institutional investors and classes of direct purchasers in antitrust matters. Prior to receiving his JD/MBA from Columbia University, Mr. Kovel was a commodities trader for a large financial firm. As a commodities trader, Mr. Kovel took financial risk in futures and options markets and traded physical markets in the US, Europe, Asia and Latin America and became a specialist in understanding market dynamics, especially in pricing matters. In addition to Mr. Kovel, the attorneys from Kirby McInerney who will be litigating this action have served in leadership positions representing plaintiffs in numerous antitrust and Commodity Exchange Act actions alleging the manipulation of prices of a commodity, including:

- *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (S.D.N.Y. 2011) (serving as co-lead interim class counsel for a class of Exchange-Based Plaintiffs alleging the fixing of prices of the LIBOR benchmark interest rate and achieving the first classwide "icebreaker" settlement in the MDL);

- *In re North Sea Brent Crude Oil Futures Litig.* No. 13-md-02475 (S.D.N.Y. 2013) (serving as sole lead interim class counsel for class of Brent Crude Oil Derivatives Traders alleging benchmark manipulation);

- *In re Foreign Exchange Benchmark Rates Antitrust Litig.* No. 13-cv-00789 (S.D.N.Y. 2013) (serving as fiduciary for a putative class of FX futures and options traders on behalf of interim exchange class counsel);

- *In re Reformulated Gasoline (RFG) Antitrust and Patent Litigation and Related Actions*, No. 05-md-1671 (C.D. Cal. 2005) (serving as co-lead counsel in an antitrust class action relating to the manipulation of the standard-setting process for low-emissions reformulated gasoline in California, which plaintiffs claim caused inflated retail prices, and obtaining $48 million settlement for indirect purchasers); and

- *In re BP Propane Indirect Purchaser Antitrust Litigation,* No. 06–cv-3541 (N.D. Ill. 2006) (serving as co-lead counsel for propane purchaser class and obtaining $15 million settlement on behalf of propane purchasers).

## 2. Robins Kaplan

Robins Kaplan, one of the few litigation firms to represent both plaintiffs and large corporate defendants, is among the nation's premier trial law firms, with more than 220 attorneys in seven major cities. Robins Kaplan brings over 75 years of litigation experience to its representation of corporate, government and individual clients on both sides of the courtroom.

Robins Kaplan has a wealth of experience successfully litigating complex class action cases. *See* Robins Kaplan Firm Resume, Exhibit B to the Kovel Declaration. Recently, Robins Kaplan, as co-lead counsel and the pioneer of the litigation, reached a groundbreaking $7.25 billion antitrust class action settlement—the largest ever for a private antitrust class action—with Visa, MasterCard and several major U.S. banks relating to interchange fees and merchant point-of-sale rules. *See In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 986 F. Supp. 2d 207 (E.D.N.Y. 2013). Robins Kaplan also broke new ground when it obtained a landmark $6.6 billion settlement on behalf of the State of Minnesota and Blue Cross and Blue Shield of Minnesota in an antitrust and consumer-fraud lawsuit against the tobacco industry. *See State of Minnesota and Blue Cross & Blue Shield of Minnesota v. Philip Morris Inc. et al.*, No. Cl-95-1324 (Minn.).

Robins Kaplan's expertise in *both* commodities manipulation and antitrust class actions makes it uniquely well-suited to lead this case. The attorneys from Robins Kaplan who will be litigating this action have served in leadership positions representing plaintiffs in numerous vigorously contested major antitrust actions, including:

- *In re Air Cargo Shipping Services Antitrust Litig.*, No. 06-md-01775 (E.D.N.Y. 2006) (securing over $1 billion in partial settlements to date regarding an alleged global conspiracy to fix surcharge prices for air cargo shipping services);

- *In re Automotive Parts Antitrust Litig.*, No. 12-md-2311 (E.D. Mich. 2012) (securing approximately $225 million in partial settlements to date regarding an alleged conspiracy to unlawfully fix the prices of automotive parts);

- *Dahl v. Bain Capital Partners LLC*, No. 07-cv-12388 (D. Mass 2007) (obtaining nearly $600 million in settlements in a class action suit against the largest private equity firms who allegedly conspired to suppress the acquisition prices for target companies in leveraged buyouts);

- *In re Polyurethane Foam Antitrust Litig.*, No. 1:10-md-02196 (N.D. Ohio 2010) (as a member of the Plaintiffs' Executive Committee, obtaining over $430 million in settlements regarding an alleged conspiracy to unlawfully fix the prices of polyurethane foam);

- *In re Lorazepam and Clorazepate Antitrust Litig.*, No. 03-md-1290 (D.D.C. 2003) (securing a $147 million class settlement for claims that a generic drug manufacturer implemented an unlawful and anticompetitive scheme to increase the prices for generic versions of two anti-anxiety drugs);[1] and

- *National Metals Inc. v. Sumitomo Corp et al.*, No. GIC 734001 (Cal. Super. Ct., San Diego County) (serving as lead class counsel and obtaining over $90 million in

---

[1] Prior to joining Robins Kaplan.

settlements to resolve claims that Sumitomo Corporation participated in a conspiracy to manipulate copper commodity prices on the London Metals Exchange)[2];

Robins Kaplan attorneys also have a particular depth of experience in successfully litigating actions involving manipulation and monopolization of energy futures markets, which are the claims for relief alleged against Defendants in this case.

- *In re Natural Gas Commodity Litig.*, No. 03-cv-06186 (S.D.N.Y. 2003) (serving as co-lead counsel in an energy futures market manipulation class action in which Bernard Persky was instrumental in obtaining $101 million in settlements, then the second largest commodity manipulation class action recovery on record);[3]

- *In re Optiver Commodities Litig.*, No. 08-cv-6842 (S.D.N.Y. 2008) (serving as co-lead counsel, attorneys from Robins Kaplan (including, Bernard Persky), secured a $16.75 million class action settlement in an energy futures market manipulation case);[4]

- *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-3600 (S.D.N.Y. 2011) (securing a $16.5 million settlement while Robins Kaplan served on Plaintiffs' Executive Committee in an energy commodity market manipulation case); and

- *Amaranth Natural Gas Commodities Litig.*, No. 07-cv-06377 (S.D.N.Y. 2007) (securing a $77.1 million settlement while attorneys currently with Robins Kaplan

---

[2] Prior to joining Robins Kaplan.

[3] Prior to joining Robins Kaplan.

[4] In addition, Mr. Persky recently co-authored an article, *Brent Crude Oil Price-Fixing: Have We Seen This Before?*, examining another instance of alleged commodity manipulation in energy futures markets and related indices. LAW360, (Aug. 1, 2013), http://www.law360.com/articles/461323/brent-crude-oil-price-fixing-have-we-seen-this-before.

served on Plaintiffs' Executive Committee in an energy commodity market manipulation class action).[5]

Robins Kaplan has also litigated hundreds, if not thousands, of cases to a successful jury verdict, including those involving complex antitrust and class action claims on behalf of both direct and indirect purchaser plaintiffs. For example, in *In re Lorazepam and Clorazepate Antitrust Litigation*,[6] the firm obtained a $76.8 million jury verdict on behalf of three health insurers who overpaid for prescription drugs because of the branded manufacturer's exclusion of generic competition through the restriction of the generics' supply of the active pharmaceutical ingredient. And in *In re TFT-LCD (Flat Panel) Antitrust Litigation*,[7] the firm obtained a $7.47 million unanimous jury verdict on behalf of Best Buy Co., Inc. against HannStar Display Corporation for its participation in a global antitrust conspiracy to fix prices for liquid-crystal display panels.

Moreover, attorneys at Robins Kaplan have been recognized for the quality of their legal work on many occasions, including before this Court. Indeed, your Honor, in approving a $90 million antitrust class settlement with Bristol-Myers Sqibb, commented on the work of lead class counsel, stating "the lawyers in this case [including attorneys now with Robins Kaplan] have done a stupendous job. They really have." *In Re Buspirone Antitrust Litigation*, No. 01-md-01413 (S.D.N.Y. 2001).[8] For instance, *Chambers USA* ranked Robins Kaplan in the first band nationally for its plaintiffs' antitrust work in 2014 and 2015, and stated that Robins Kaplan's Antitrust and Trade Regulation Practice Group "[r]eceives widespread praise for its capabilities

---

[5] Prior to joining Robins Kaplan.

[6] Case No. 02-cv-01299 (D.D.C. 2002).

[7] Case No. 07-md-01827 (N.D. Cal. 2007).

[8] Prior to joining Robins Kaplan. *See also* Section II.A., *infra*, pg. 20, n.10.

in all types of antitrust matters but has achieved particularly significant success on behalf of plaintiff clients" and "[d]emonstrates considerable trial experience."[9] Given its experience and record of success, courts regularly appoint attorneys in Robins Kaplan's Antitrust and Trade Regulation Practice Group to lead high-profile antitrust and commodities manipulation class actions.

### 3. CCMS

CCMS' second-to-none experience handling similar commodities, securities and antitrust matters (*see* CCMS Firm Resume, Exhibit C to the Kovel Declaration) renders it particularly capable of serving as a co-lead counsel in this case. CCMS' primary partner on the case, Anthony F. Fata, previously associated with the securities and commodities class action and regulatory defense practice at McDermott Will & Emery, has been prosecuting class actions at CCMS for more than a decade, serves as a recurring faculty member for the Practising Law Institute's Internal Investigations seminar, and brings a wealth of other pertinent experience to this case. In particular, he has a deep understanding of exchange and OTC products and trading desk operations, and he regularly handles regulatory defense and internal investigations arising from alleged financial market manipulation and compliance matters relating to federal, state and exchange regulations. Daniel O. Herrera, previously associated with Mayer Brown LLP where

---

[9] Notable publications that have honored Robins Kaplan include: the National Law Journal's 2015 Plaintiffs' Hot List; Legal 500 USA 2015 (recognizing Robins Kaplan as among the nation's top firms in plaintiffs' antitrust class actions); Global Competition Review (naming Robins Kaplan as one of the nine leading antitrust law firms in the country in their 2014 feature of the U.S. antitrust plaintiffs' bar); BTI Consulting Group's Litigation Outlook 2013 (naming Robins Kaplan an "Awesome Opponent"); ALM (placing Robins Kaplan on its list of "2013 Go To Law Firms for the Top 500 Companies"); and Law360 (naming Robins Kaplan as one of its "Competition Practice Groups of 2014").

he represented clients in SEC and DOJ defense matters, has an MBA with a concentration in finance. Jennifer W. Sprengel, a name partner, has decades of experience handling commodities and antitrust class actions. CCMS has many other attorneys with extensive pertinent experience, who are prepared to assist in this case as needed, including Bryan L. Clobes, a former CFTC Trial Counsel, and Ellen Meriwether, a member of the Advisory Board of the American Antitrust Institute and the Editorial Board of ANTITRUST, a publication American Bar Association's Antitrust Law section.

Over the last three decades, CCMS has achieved remarkable recoveries while serving in positions of leadership, including class counsel, executive committee members, and other de facto leadership positions earned as a result of its breadth of experience and excellent work. Examples of CCMS' achievements in commodities and antitrust class actions include:

- *Hershey/Kohen v. Pacific Investment Management Co. LLC*, No. 05-cv4681 (N.D. Ill. 2005). As liaison and class counsel in an action arising from PIMCO's manipulation of 10-year treasury notes futures traded on the Chicago Board of Trade, CCMS helped secure a $118 million settlement for the class. Reported opinions: 571 F.3d 672 (7th Cir. 2009); 697 F. Supp. 2d 945 (N.D. Ill. 2010); 244 F.R.D. 469 (N.D. Ill. 2007);

- *In re Sumitomo Copper Litig.*, No. 96–cv-4584 (S.D.N.Y. 1996). As class counsel in action arising out of manipulation of global copper market, CCMS helped the class obtain settlements totaling $134.6 million. *See* 189 F.R.D. 274 (S.D.N.Y. 1999). In awarding attorneys' fees, Judge Milton Pollack noted that it was "the largest class action recovery in the 75 plus year history of the Commodity Exchange Act." 74 F.

Supp. 2d 393 (S.D.N.Y. Nov. 15, 1999). Additional reported opinions: 995 F. Supp. 451 (S.D.N.Y. 1998); 182 F.R.D. 85 (S.D.N.Y. 1998);

- *In re Crude Oil Commodity Futures Litig.*, No. 11-cv-03600 (S.D.N.Y. 2011). As class counsel in action arising from manipulation of NYMEX West Texas Intermediate grade crude oil futures contracts, CCMS helped the class, through discovery and other efforts, achieve a $16.5 million settlement. Reported opinion: 913 F. Supp. 2d 41 (S.D.N.Y. 2012);

- *In re North Sea Brent Crude Oil Futures Litig.*, No. 13-md-02475 (S.D.N.Y. 2013). As class counsel in action arising from Brent crude benchmark manipulation by North Sea oil, CCMS has devoted significant time and expense toward investigation, expert analysis and pleading motion practice;

- *In re Soybean Futures Litig.,* No. 89-cv-7009 (N.D. Ill. 1989). As class counsel arising from a notorious manipulation of the soybean futures CCMS helped the class obtain settlements totaling $21.5 million. *See* 892 F. Supp. 1025 (N.D. Ill. 1995);

- *Kamakahi v. American Society for Reproductive Medicine*, No. 11-cv-01781 (N.D. Cal. 2011). As Co-Lead Counsel in a cutting edge antitrust case concerning compensation caps in the reproductive services industry, and without the benefit of a parallel government case or investigation, CCMS achieved a groundbreaking settlement (preliminarily approved on March 23) that ends the long-time compensation caps;

- *In re Insurance Brokerage Antitrust Litig.*, No. 04-md-1663 (D.N.J.). CCMS was appointed Co-Lead Counsel for plaintiffs who alleged that insurance brokers and insurers conspired to allocate customers in a complicated scheme to maximize their

own revenues at the expense of class members and achieved settlements exceeding $270 million. Judge Claire C. Cecchi recently observed that "Class counsel include notably skilled attorneys with experience in antitrust, class actions and RICO litigation.";

- *In re Relafen Antitrust Litig.* No. 01-cv-12239 (D. Mass. 2001). As Co-Lead Counsel, CCMS helped recover $75 million for the benefit of consumers and third-party payors who paid for branded and generic versions of the arthritis medication Relafen. In certifying an exemplar class of end-payors, the court singled out our Firm as experienced and vigorous advocates. *See In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 273 (D. Mass. 2004). In the opinion granting final approval to the settlement, the court commented that "Class counsel here exceeded my expectations in these respects [*i.e.*, experience, competence, and vigor] in every way." *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 85 (D. Mass. 2005); and

- *State of Indiana v. McWane*, No. 12-cv-6667 (D.N.J. 2012). CCMS serves as counsel for the State of Indiana Attorney General, Greg Zoeller, in a case alleging that certain ductile iron pipe fittings manufacturers conspired to fix prices and monopolize the market.

### 4. Cohen Milstein

As shown at length in the Cohen Milstein Firm Resume, attached as Exhibit D to the Kovel Declaration, for over forty years Cohen Milstein, a firm that now includes over eighty lawyers and offices in New York, Washington, D.C., Chicago, Philadelphia, and Colorado, has been one of the largest, most successful and respected plaintiffs' class action firms in the country. Cohen Milstein's attorneys possess both impressive credentials, including former federal

prosecutors, former law clerks to federal District and Circuit Court judges, graduates of the nation's most selective law schools, the former Deputy General Counsel for the Commodity Futures Trading Commission ("CFTC"), and the former Attorney General for the District of Columbia, and a passion for pursuing justice on behalf of their clients.

The firm has litigated some of the nation's most complex cases and recovered billions of dollars in damages for injured plaintiffs. Notable recent successes as lead or co-lead counsel include receiving the largest antitrust class action jury verdict in *history* – the more than $1.1 billion (after trebling) jury verdict against Dow Chemical in *In re Urethane Antitrust Litigation*, No. 04-md-1616 (D. Kan. 2004), upheld by the Tenth Circuit last year and, in this District alone over the last two years, the $566 million of settlements in *In re Electronic Books Antitrust Litigation*, No. 11-md-02292 (S.D.N.Y. 2011), before Judge Cote of this District earlier this year; and settlements of $500 million, $325 million and $275 million in the *Bear Stearns MBS Litigation*, No. 08-cv-08093 (S.D.N.Y. 2008), *RALI MBS Litigation*, No. 08-cv-8781 (S.D.N.Y. 2008) and the *Harborview MBS Litigation*, No. 08-cv-5093 (S.D.N.Y. 2008), before the late Judge Baer and Judges Preska, Failla, and Swain of this District.

Accolades received by Cohen Milstein for its work on behalf of clients include being described by The Trial Lawyer as one of "America's 25 Most Influential Law Firms" and an "Elite Trial Lawyer firm," being ranked by Legal 500 as a "Leading Plaintiff Class Action Antitrust Firm" for the past six years, being selected for the National Law Journal for their 2015 Plaintiffs' Hot List (the fourth time in the last five years), and being named a "Competition Group of the Year" by Law360.com in 2014—the first time that publication ever included a plaintiff-side firm amongst its honorees as well as a "Most Feared Plaintiffs Firm" by that same publication for the last three years.

The Cohen Milstein team working on this matter possesses substantial expertise in the class action, antitrust, and Commodity Exchange Act fields. For instance, J. Douglas Richards, one member of the Cohen Milstein team and the managing partner for Cohen Milstein's New York office, served as Deputy General Counsel of the CFTC from 1997 to 2000. During that time, Mr. Richards assumed responsibility for all litigation by and against the CFTC, and for two of those years also managed the CFTC's adjudicatory functions. In 1999, the Commission awarded Mr. Richards a Special Service Award for performing those two roles simultaneously and successfully eliminating a longstanding backlog of Commission adjudicatory matters. Mr. Richards's expertise in the antitrust class action field is widely recognized as he was named one of twenty-two antitrust "Litigation Stars" nationally, was named one of the world's leading competition lawyers by The International Who's Who of Competition Lawyers and Economists (2014), and received the highest available peer ranking for many years from Martindale-Hubbell. Michael Eisenkraft, another member of the Cohen Milstein team, serves as the Administrative Partner for Cohen Milstein's New York office and plays a leading role in prosecuting for the firm cases relating to the protection of commodity markets. Mr. Eisenkraft previously served as a law clerk for a judge on the Second Circuit Court of Appeals, has authored a dozen articles on various legal issues, most having to do with class action, antitrust, or securities issues, and has been selected as a "Rising Star" by New York Super Lawyers for 2013, 2014, and 2015.

**B.     Movants' Commitment To This Action Is Demonstrated By The Significant Time And Resources They Have Expended Identifying, Investigating, and Prosecuting The Claims To Date on Behalf of the Class**

Movants originated and developed this case—a process which required specialized legal expertise in both the Commodity Exchange Act and antitrust laws, knowledge of the natural gas physical, financial and futures markets, and extensive investigation of those markets. Prior to filing the original complaint on December 10, 2015, Movants sought and received extensive

input from consulting commodity futures experts. In addition to drafting and filing the original complaint, Movants amended the complaint twice—to add additional expert analysis of the natural gas physical and futures markets and additional Plaintiffs, including a proprietary trading fund and a public utility district. Movants also have served Defendant and negotiated a scheduling order. No other complaint has been filed arising from the facts alleged in this action.

### C. Movants Have the Requisite Knowledge of Commodity Futures Manipulation, Antitrust Law and Class Action Litigation

As demonstrated above as well as in the firm resumes attached to the Kovel Declaration, Movants have extensive knowledge of the legal subjects relevant to this litigation, particularly commodity futures market manipulation, antitrust law, and class action litigation. Movants respectfully submit that their knowledge of the law applicable to the claims and defenses in this litigation is reflected in the successful results they have obtained in prosecuting other complex commodity futures manipulation and antitrust class actions. *See* Section I.A., *supra*.

### D. Movants Will Commit More Than Ample Resources to Representing the Class

#### 1. Kirby McInerney

Kirby McInerney has the financial, professional, investigative, and technological resources required to prosecute these claims. Moreover, Kirby McInerney is committed and able to devote and expend the significant resources necessary to properly prosecute this important litigation. These resources include millions of dollars for experts and consultants, the undertaking of international discovery, the use of advanced software systems for analyzing electronic documents and the commitment of numerous investigative and attorney professionals needed to advance the complex claims here and represent plaintiffs adequately against highly-qualified defense counsel.

Indeed, Kirby McInerney is well equipped with resources and expertise to handle large-scale litigation and invest the resources needed to succeed in these type of actions. A case in point is *In re Pharmaceutical Industry Average Wholesale Price Litigation*, No. 01-md-1456 (D. Mass. 2001): *The City of New York, et al. v. Abbott Laboratories, et al.*, No. 01-cv-12257 (D. Mass. 2001). In that matter, Kirby McInerney vigorously litigated against 40 defendant drug manufacturers as counsel to the State of Iowa, the City of New York, and 42 New York County governments in individual Medicaid fraud cases asserting that the defendant pharmaceutical companies manipulated their average wholesale price data to inflate prices charged to government payors. Since 2003, this case has involved immense discovery and expert burdens. Kirby McInerney has recovered over $225 million for the New York and Iowa Medicaid programs. In the process, Kirby McInerney obtained partial summary judgment against thirteen companies for false reporting practices, successfully defended more than 20 motions to dismiss, and resolved claims against all but eight defendants. Kirby McInerney is well prepared to commit similar resources in this litigation.

### 2. Robins Kaplan

Robins Kaplan is well-capitalized and has the manpower necessary to vigorously and successfully prosecute this litigation. Indeed, Robins Kaplan has prosecuted a number of major class actions seeking billions of dollars in federal courts throughout the country. *See, e.g.*, *In re Air Cargo Shipping Services Antitrust Litigation*, No. 06-md-01775 (E.D.N.Y. 2006); *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 05-md-1720 (E.D.N.Y. 2005). In successfully prosecuting contingent litigation for decades, Robins Kaplan routinely advances the costs of litigation and has demonstrated an ability and willingness to dedicate its substantial resources to vigorously prosecute litigation on behalf of its clients. In *In re Air Cargo Shipping Services* alone, the firm has undertaken over a decade of intense trial preparation

16

that has included taking depositions around the globe, reviewing over 12 million pages of documents and negotiating almost $1.2 billion in settlements. The firm is now preparing for trial against the remaining two defendants.

Robins Kaplan also has three distinct practice groups dedicated to providing significant litigation support to its attorneys. First, Robins Kaplan has a committed team of in-house financial and economic consultants, comprised of individuals with certifications and degrees such as CPAs, MBAs and PhDs. These consultants provide an efficient and cost-effective means to develop econometric measures of "but-for" pricing, market share and damages that are usually performed by for-hire consultants. Second, Robins Kaplan has a dedicated e-discovery team whose sole mission is to develop strategic e-discovery plans, customized to be cost-effective and efficient for each of the firm's countless complex actions. Third, Robins Kaplan has a Trial Support and Multimedia/Graphics Department that provides multimedia and logistics support services to the firm's trial attorneys. Courtroom technology, hotel and war-room technology and equipment, and mock trial assistance are just a few of the trial-specific resources available to the firm. Robins Kaplan is prepared to deploy all of these valuable resources for the benefit of the proposed Class in this litigation.

### 3. CCMS

CCMS, with offices in Chicago, Philadelphia and Ann Arbor, has devoted and will continue to devote the resources necessary to the prosecution of this litigation. CCMS has been successfully prosecuting class actions on a contingency basis for more than three decades and has ample resources to devote to this litigation. CCMS is accustomed to advancing the thousands of hours of time and massive costs necessary to succeed in complex litigation against well-heeled defendants, and CCMS is ready, willing and able to do so here. With a primary office in Chicago, where key CME and ICE operations and many class members are situated, CCMS is embedded

in the Chicago trading and academic communities and routinely draws upon a vast array of properly tailored consultants and experts necessary to the successful prosecution of a commodity-focused matter such as this one, and has already done so in this case. Finally, CCMS has ample associate resources necessary for the document review and other tasks that will need to be conducted expeditiously and efficiently in this case.

### 4. Cohen Milstein

Cohen Milstein, with eighty-eight attorneys in six offices, is one of the largest plaintiffs' class action firms in the United States. Cohen Milstein has been repeatedly entrusted by courts to lead some of the largest and most complex class actions in the country and has always repaid that trust by devoting appropriate resources to the matter at hand. For example, in the recently settled *RALI MBS Litigation*, No. 08-cv-8781, where Cohen Milstein acted as sole lead counsel, Judge Failla noted the Herculean efforts undertaken on behalf of the class by Cohen Milstein over a period of more than six years en route to $335 million in settlements, including, as Judge Failla of this District described: "briefing and arguing, three separate motions to dismiss, briefing and arguing class certification three times before the district court, briefing four Rule 23(f) petitions to the Second Circuit, fully litigating an appeal before the Second Circuit regarding class certification, conducting discovery in connection with class certification following the Second Circuit ruling, briefing and arguing intervention motions, briefing and arguing a motion for reconsideration, briefing and arguing discovery motions before Magistrate Judge Freeman, completing the fact discovery [including four million pages of documents, service of 215 nonparty subpoenas by lead counsel, 105 subpoenas by defendants, and 15 fact depositions taken by lead counsel], completing the expert discovery [including sixteen expert depositions], and then preparing the briefing in connection with the summary judgment and Daubert motions" – efforts which took an investment of over 80,000 hours of time and millions

of dollars in expenses.  *See* http://www.ralimbslitigation.com/pdflib/Final_Approval_Hearing_ Transcript.pdf at Tr. at 18-19.

## II.  Discretionary Factors Favor Granting Kirby McInerney, Robins Kaplan, CCMS, and Cohen Milstein's Motion

### A.  Designation of the Proposed Four-Firm Interim Co-Lead Counsel Structure Will Facilitate Sound Judgment and Efficient Litigation

Designation of four Interim Co-Lead Counsel is appropriate here in order "to protect the interests of the putative class."  FED. R. CIV. P. 23(g)(3), Advisory Committee's note (2003 Amendments).  *See also* Third Circuit Task Force Report, Selection of Class Counsel at 96 (Final Rep. Jan. 2002), http://www.ca3.uscourts.gov/task-force-selection-class-counsel ("[T]he court should be cognizant of the possibility that the class could benefit from the combined resources and expertise of a number of counsel, especially in a complex case where the defendants are represented by a number of large and highly qualified law firms.").  In a complex commodities futures manipulation and antitrust class action, a four-firm leadership structure is an effective and tested organizational model that facilitates both sound decision-making and efficiency.  Indeed, numerous other courts in commodity futures manipulation and antitrust class actions have adopted a proposed four-firm co-lead counsel structure, including your Honor in *In Re Buspirone Antitrust Litigation*, No. 01-md-01413 (S.D.N.Y. 2001).[10] *See also In re Dental Supplies Antitrust Litig.*, No. 16-cv-00696 (E.D.N.Y. Feb. 12, 2016), ECF No. 2; Order, *In re Automotive Wire Harness Systems Antitrust Litig.*, No. 12-md-02311 (E.D. Mich. Mar. 19, 2012), ECF No. 60 (appointing four firms co-lead counsel for the direct purchaser plaintiffs in an antitrust class action);  *In re Air Cargo Shipping Servs. Antitrust Litig.*, 240 F.R.D. 56, 57

---

[10] Among the lead attorneys appointed by your Honor to the four-firm lead counsel structure in that case were Hollis Salzman and Bernard Persky, now with Robins Kaplan, and J. Douglas Richards, now with Cohen Milstein.

(E.D.N.Y. 2006) (appointing four firms co-lead counsel in an antitrust class action); *In re Natural Gas Commodity Litig.*, No. 03-cv-6186 (S.D.N.Y. 2003), ECF No. 89 (appointing four firms co-lead counsel in a commodity futures class action).

Movants will eliminate any unnecessary duplication by, for example, agreeing upon the division of tasks at the outset, limiting compensable time for review of materials for which attorneys are not primarily responsible, and selecting an appropriate number of attorneys to participate in meetings, telephone calls and other proceedings in the case. Movants have agreed upon other protocols which would ensure the most efficient use of Interim Co-Lead Counsels' time.

**B.      Movants Agree The Proposed Four-Firm Interim Lead Counsel Structure Is In The Best Interests Of The Classes**

Private ordering—the process where counsel jointly come to a representational consensus and submit their recommendation to the court—is another factor that courts generally consider when choosing who to appoint as lead counsel.  It is widely recognized that it is desirable for plaintiffs' counsel to reach consensus among themselves about which firms should be proposed for appointment as interim class counsel.  Indeed, the Manual for Complex Litigation advises that efforts by "attorneys [to] coordinate their activities without the court's assistance . . . should be encouraged." MANUAL FOR COMPLEX LITIGATION (Fourth) § 10.22 (2006).  *See also* Third Circuit Task Force Report, Selection of Class Counsel at 95 (Jan. 2002), http://www.ca3.uscourts.gov/task-force-selection-class-counsel ("Case law and experience indicates that the dominant scenario for appointing class counsel is deference to private ordering. The Task Force believes that there is generally no reason to hold an auction when the court is presented with qualified counsel who has been chosen through private ordering.").  Here, the proposed leadership structure was formed by consensus following numerous communications

among counsel over the past several months. Movants believe that the proposed four-firm Interim Co-Lead Counsel structure will be in the best interests of the class and respectfully request that the Court grant their application.

## CONCLUSION

For the forgoing reasons, the Court should appoint Kirby McInerney LLP, Robins Kaplan LLP, Cafferty Clobes Meriwether and Sprengel LLP, and Cohen Milstein Sellers & Toll PLLC as Interim Co-Lead Counsel.

Dated: March 30, 2016                    Respectfully Submitted,

**KIRBY McINERNEY LLP**
By: _/s/ David E. Kovel_____
David E. Kovel
Lauren Wagner Pederson, Of Counsel
Thomas W. Elrod
dkovel@kmllp.com
lpederson@kmllp.com
telrod@kmllp.com
825 Third Avenue, 16th Floor
New York, NY 10022
Telephone: (212) 371-6600
Facsimile: (212) 751-2540

**ROBINS KAPLAN LLP**
Hollis Salzman
Kellie Lerner
Bernard Persky
hsalzman@robinskaplan.com
klerner@robinskaplan.com
bpersky@robinskaplan.com
601 Lexington Avenue, Suite 3400
New York, NY 10022
Telephone: (212) 980-7400
Facsimile: (212) 980-7499

K. Craig Wildfang
kcwildfang@robinskaplan.com
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402

Telephone:  (612) 349-8500
Facsimile:  (612) 339-4181

**CAFFERTY CLOBES MERIWETHER &
SPRENGEL LLP**
Anthony F. Fata
Jennifer W. Sprengel
Daniel O. Herrera
afata@caffertyclobes.com
jsprengel@caffertyclobes.com
dherrera@caffertyclobes.com
150 S. Wacker Dr., Suite 3000
Chicago, IL 60606
Telephone:  (312) 782-4880
Facsimile:  (312) 782-4485

**COHEN MILSTEIN SELLERS & TOLL
PLLC**
J. Douglas Richards
Michael Eisenkraft
drichards@cohenmilstein.com
meisenkraft@cohenmilstein.com
88 Pine Street
14th Floor
New York, NY 10005
Telephone:  (212) 838-0177
Facsimile:  (212) 838-7745

*Proposed Co-Lead Counsel*

Steven R. Goldberg, Esq.
225 Liberty Street, Suite 1020A
New York, New York 10281
sgoldberg@srglaw.nyc
Telephone:  212-845-5100
Facsimile:  212-845-4197

*Counsel for Plaintiffs and the Proposed Class*